THE KINNEAR & GAGER MANUFACTURING COMPANY *v.* CHARLES MINER.

Special Term at Brattleboro, February, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed November 27, 1914.

*Parol Evidence—Contradiction of Written Agreement—Collateral Agreement—Fraud—Purpose—Several Writings—Construction by Extrinsic Circumstances.*

Where there is no latent ambiguity in a written contract it cannot be qualified, controlled, contradicted, enlarged, or diminished, as to either its express terms or its legal intendment, by any contemporaneous or prior understanding.

The parol evidence rule does not exclude evidence of extrinsic matters that tend to show that the writing was procured by fraud, but does exclude evidence that the writing was to be confined to a specified purpose and was not to be enforced against the maker.

Parol evidence of an agreement concerning a branch of the transaction, which is in no way covered by the writing and is not inconsistent therewith, may be received where it appears that the parties did not intend to reduce the whole transaction to writing.

A contract evidenced by several writings, although one is a receipt, cannot be varied or contradicted by parol evidence regarding a matter in respect of which the writings, taken together, are specific.

Ordinarily the intent of the parties to a written instrument is to be determined thereby, but, where its language is doubtful or ambiguous, parol evidence as to the situation and motives of the parties is admissible in aid of its construction.

In a suit on a written contract resulting from defendant's having
   signed an acceptance of plaintiff's written proposal to furnish
   designated material for the outside of a building at a specified
   price, parol evidence was inadmissible to show that the material
   was to be furnished by plaintiff without charge in consideration
   of defendant's having at the same time entered into another
   written contract with plaintiff for the furnishing by the latter
   of specified material for the inside of the same building.

ASSUMPSIT.  Plea, the general issue.  Trial by jury at the
September Term, 1913, Windham County, *Miles*, J., presiding.
Verdict and judgment for the defendant.  The plaintiff ex-
cepted.  The opinion states the case.

*Barber & Barber* for the plaintiff.

*Chase & Chase* for the defendant.

MUNSON, J.  The plaintiff sues to recover a sum claimed to
be due on a signed proposal submitted by it to the defendant and
accepted by him, the body of which is as follows: ''We herein
propose to furnish for your new building at Brattleboro all
necessary outside pebble metal material in galvanized finish at
the price of $3.25 per hundred sq. feet.  The amount of material
necessary to be about 7,000 sq. feet.''

There was another contract between the parties, executed
at the same time, wherein the plaintiff agreed to furnish and
erect, for $1,232, a steel ceiling on certain interior surfaces of
the same building.  There was also a contract of prior date
which evidenced an agreement of the plaintiff to cover other
parts of the building with steel ceiling for $2,400.

The defendant claimed that the outside material specified
in the writing sued upon was to be furnished without charge
in consideration of his entering into the second contract for
inside covering, and that he signed the writing, on the repre-
sentations of plaintiff's agent, to enable the plaintiff to secure
the outside material from a firm carrying that stock.  The main
question in the case arises upon the admission of evidence offered
to establish this claim of the defendant, against the plaintiff's
objection that it was evidence varying the terms of a written
contract.

The general rule governing this subject, and the necessity of adhering to it, are matters beyond controversy. There are also a number of secondary rules equally well established. But, with the law of the subject fully developed in a great body of adjudged cases, difficulty is often found in applying the rules.

The subject has been quite fully treated in our own cases. The result of these cases is given in the Vermont Digest as follows: ''A written contract having no latent ambiguity cannot be qualified, controlled, contradicted, enlarged or diminished, by any contemporaneous or antecedent parol understanding.'' 1069, pl. 640. It is held further, in elucidation of the rule, that oral testimony can no more be received to rebut or contradict the legal intendment of a written instrument than to contradict its express terms. *Rich* v. *Elliot*, 10 Vt. 211; *Brown* v. *Hitchcock*, 28 Vt. 452; *Brandon Mfg. Co.* v. *Morse*, 48 Vt. 322. The rule does not forbid evidence of extrinsic matters which tend to show that the writing was procured by fraud. *Winn* v. *Chamberlin*, 32 Vt. 318; *Wilbur* v. *Prior*, 67 Vt. 508, 32 Atl. 474. But a contemporaneous oral agreement that the use of the writing shall be confined to a specified purpose and not be enforced against the maker, cannot be shown. *Gillett* v. *Ballou*, 29 Vt. 296; *Connor* v. *Carpenter*, 28 Vt. 237. Evidence of an agreement concerning a branch of the transaction which is in no way covered by the writing, and is not inconsistent with it, may be received, when it satisfactorily appears that the parties did not intend to reduce the whole transaction to writing. *Winn* v. *Chamberlin*, 32 Vt. 318; *Labbee* v. *Johnson*, 66 Vt. 234, 28 Atl. 986; *Gilman Bros.* v. *Williams*, 74 Vt. 327, 52 Atl. 428. A contract evidenced by several writings, although one is a receipt, cannot be varied or contradicted by parol in a point wherein the writings, taken together, are specific. *Raymond* v. *Roberts*, 2 Aik. 204, 16 Am. Dec. 698. Ordinarily the intent of the parties is to be determined from what appears in the writing. *Pingry* v. *Watkins*, 17 Vt. 379; *Hakes* v. *Hotchkiss*, 23 Vt. 231; *Dixon* v. *Blondin*, 58 Vt. 689, 5 Atl. 514. But when the intent of the parties upon the face of the instrument is doubtful, or the language used will admit of more than one interpretation, the court will look at the situation and motives of the parties, the subject-matter of the contract, and the object to be attained by it; and will receive parol evidence to this end. *Lowry* v.

*Adams,* 22 Vt. 160; *Wing* v. *Cooper,* 37 Vt. 169; *Bacon* v. *Dodge,* 62 Vt. 460, 20 Atl. 197.

In *Farnham* v. *Ingham,* 5 Vt. 514, it was held by a divided court that a parol agreement, made at the time of executing a note, that the note might be paid in a manner different from that expressed in it, was admissible in evidence. This was overruled in terms in *Isaacs* v. *Elkins,* 11 Vt. 679, and the rule then asserted has since been applied in several cases. In *Stewards of M. E. Church* v. *Town,* 49 Vt. 29, the suit was on a building subscription, and the defendant claimed that it was agreed as a part of the contract of subscription that he should be employed in the construction and could pay his subscription in work. The court said that the written subscription showed on its face a single, entire and completed contract, and did not purport to be a part of a contract, another part of which had been purposely omitted from the writing, and that the application of the general rule to the case could not be made plainer by discussion.

Reference should also be had to *Blodgett* v. *Morrill,* 20 Vt. 509; another suit on a subscription contract. Here the defendant offered to show that he was induced to sign the subscription solely by an assurance of the agent that "he wanted his signature to influence others to sign" and that "he should never be called upon to pay." The court said that this was directly contradictory to the written stipulation, and could no more be received than could parol evidence of a promise not to collect a promissory note, or to accept payment in some different mode from that specified in the contract.

There is nothing in the evidence in this case that affords any basis for a claim that the writing was fraudulently procured, and no such claim is made. The position taken by the defendant is comprised in two distinct propositions. It is claimed that the outside material was "thrown in" by the plaintiff to secure the defendant's order for further inside work; so that the amount paid for the latter was the consideration for both. It is claimed that the writing in suit was signed by the defendant merely to enable the plaintiff to meet some trade requirement, the exact nature of which does not appear,—and was to be used for no other purpose. In passing upon the defendant's claim, the writing in suit and the contemporaneous agreement for inside work are to be considered together. This contemporane-

ous agreement contains a detailed specification of the work tc be done, and the consideration is a fixed sum for the whole work. In the writing sued upon the material contracted for is to be furnished at a given price per hundred square feet. This is the same in legal effect as if it were provided in terms that the consideration was to be paid in money. There is nothing in these writings, viewed separately or together, that suggests the existence of a further stipulation which the parties did not intend to include in the writings. The matter of consideration is fully covered in each. The claimed parol understanding is not consistent with the writing in suit. It is so absolutely inconsistent with the writing that it abrogates the contract evidenced by it.

There are several classes of cases from which this case is to be distinguished. Among these are cases where the writing was one of security, and was not intended to state the whole contract; cases where the possessor of an instrument which has been satisfied presents it as evidence of an existing obligation; cases where the writing was to take effect only when the promissee had secured another signer, or complied with some like condition; cases where the writing was not to take effect unless the promissor failed to perform some alternative undertaking. The writing in this case took effect upon delivery, and the plaintiff has performed according to its terms. It was the only contract relating to the outside covering of the building, and if there had been a failure of performance on the part of the plaintiff, it would have been the defendant's evidence of his right to recover damages.

*Judgment reversed and cause remanded.*

POWERS, C. J., dissenting. I cannot agree with my associates as to the law of this case. I do not question the general rule of evidence laid down by the majority; the trouble is, it has no application to this record. The evidence admitted did not vary the written contract,—it showed that there never *was* a contract. It showed that the paper-writing purporting to be a contract was not such, but a writing given for a legitimate, specific purpose, which had been fully accomplished.

The action is between the original parties to the alleged contract, and no questions of fraud, good morals, or public policy are involved. If there were, the majority view would be sound. *Grand Isle* v. *Kinney,* 70 Vt. 381, 41 Atl. 130.

The simple question is, Can parol evidence be given, in such circumstances, to show that the writing never had force as a valid contract?

This question, I maintain, must be answered in the affirmative.

That such ought to be the law, and that the holding of the majority results in gross injustice will be readily admitted. If one can induce me to execute and deliver to him, solely for his legitimate purposes, a writing which is, in form, a contract, and when that purpose is accomplished, hold me to it, and the courts are powerless to prevent such a fraud, it is a reproach to the law and a humiliation to fair minded men. Happily, such is not the law,—at least it was not until the majority opinion was promulgated.

The leading case on this subject is *Pym* v. *Campbell,* 6 El. & Bl. 370, 88 E. C. L. 370, the doctrine of which Prof. Wigmore says, 4 Wig. Ev. §2410, is "completely accepted" in this country, and is exactly in point. The plaintiff in that case produced an agreement signed by the defendant; but the latter gave evidence that the parties, having negotiated a purchase, agreed on the terms thereof; and it was also agreed that they and a third person should have a meeting, when, if the third person approved of the property, they would execute the bargain. At the proposed meeting, the plaintiff did not attend until the third person had departed. Whereupon. it was arranged that the parties should draw up and sign a memorandum of the agreement of sale, but that it should not be a bargain until the third person approved. The latter did not approve. Lord Chief Justice Campbell directed the jury to find for the defendant if satisfied of the arrangement testified to. And this was held to be correct. "The distinction in point of law," said Erle, J., "is that evidence to vary the terms of an agreement in writing is not admissible; but evidence to show that there is not an agreement at all is admissible." This case is like *Dodd* v. *Kemnitz,* hereinafter cited, and is expressly approved in *Wallis* v. *Littell,* 11 C. B. (N. S.) 369, 103 E. C. L. 368.

"Such evidence," says the court in *Wilson* v. *Powers*, 131 Mass. 539, "is not to show any modification or alteration of the written agreement, but that it never became operative and that its obligation never commenced."

In *Humphrey* v. *Timken Carriage Co.*, (Okla.) 75 Pac. 528, the offer was to show that the order for the goods in question was given at the solicitation of the company's agent, who represented that he had sold a carload of goods to one Berkey, who was financially involved, and it was feared that a shipment to him would involve the company with other creditors; that if Humphrey would sign the order for the goods, he would not be held liable for them, and that it would be used only for the specific purpose of enabling the company to ship to Berkey without danger. This evidence was excluded as in conflict with the contract; and this was held to be error. It is only fair to say that Prof. Wigmore criticises this case as unsound,—apparently upon the ground that the arrangement was a fraud upon the other creditors. If so, I agree that the case is unsound; but I do not understand that the case involves a question of fraud.

It was held in *Brick* v. *Brick*, 98 U. S. 514, 25 L. ed. 256, that parol evidence is admissible to show that a certificate of stock was delivered as security, merely; that the court can look beyond the terms of the writing, and that the parol evidence rule does not forbid an inquiry into the object of the parties in executing and receiving it.

*Ware* v. *Allen*, 128 U. S. 590, 32 L. ed. 563, 1 Sup. Ct. 174, holds that parol evidence is admissible in an action between the original parties to show that a written instrument, absolute on its face, and duly executed and delivered, was conditional and not to take effect until another event takes place; and that the contract therein involved never went into effect.

Mr. Justice Harlan says in *Burke* v. *Dulaney*, 153 U. S. 228, 38 L. ed. 698, 14 Sup. Ct. 816: "The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract." This case was, both as to fact and result, essentially like *Gilman Bros.* v. *Williams*, 74 Vt. 327, 52 Atl. 428.

The universality of this rule is made plain by the following cases, in which it is expressly recognized and approved: *McFarland* v. *Sikes*, 54 Conn. 250, 7 Atl. 408, 1 Am. Rep. 111; *Grierson* v. *Mason*, 60 N. Y. 394; *Robinson* v. *Nessel*, 86 Ill. App. 212; *McCartney* v. *McCartney*, 93 Tex. 359, 55 S. W. 310; *Farwell* v. *Ensign*, (Mich.) 33 N. W. 734; *Southern, etc. Co.* v. *Metropole, etc. Co.*, (Md.) 46 Atl. 513; *Central Sav. Bank* v. *O'Connor*, 132 Mich. 578, 94·N. W. 11, 102 Am. St. Rep. 433; *Reiner* v. *Crawford*, 23 Wash. 669, 63 Pac. 516, 83 Am. St. Rep. 848; *Elastic Tip Co.* v. *Graham*, 185 Mass. 597, 71 N. E. 117; *Dodd* v. *Kemnitz*, (Neb.) 104 N. W. 1069; *O'Conner* v. *Lighthizer*, 34 Wash. 152, 75 Pac. 643; *Hurlburt* v. *Dusenbery*, 26 Colo. 240, 57 Pac. 860; *Stanley* v. *White*, 160 Ill. 605, 43 N. E. 729; *Sutton* v. *Griebel*, 118 Ia. 78, 91 N. W. 825; *Cleveland Ref. Co.* v. *Dunning*, 115 Mich. 238, 73 N. W. 239; *Benton* v. *Martin*, 52 N. Y. 570.

I do not overlook the fact that some of these cases are in equity; but Chief Judge Redfield says that the rule is the same at law as it is in equity. *Winn* v. *Chamberlin*, 32 Vt. 318. And, of course, this is just as it should be.

I have made no effort to make the foregoing list of cases exhaustive, for I do not need to go away from home at all, in my quest for authority. The rule I am contending for is not unfamiliar to this Court.

In was held in *Sanders* v. *Howe*, 1 D. Chip. 363, that, in an action on a promissory note given by the defendant to the plaintiff, it was competent to show that it was delivered upon a condition that it should be returned upon the happening of an event which had taken place.

So in *Labbee* v. *Johnson*, 66 Vt. 234, 28 Atl. 986, it was held that the maker of a promissory note may always show the terms and conditions on which it was delivered, and that the payee or holder has no right to hold it except for the accomplishment of a particular purpose.

That one could show by parol that he signed the agreement in question upon the condition that it should not be binding unless all the defendant's creditors signed it, and that they had not all done so, is held in *Holmes* v. *Crossett*, 33 Vt. 116; *Elastic Tip Co.* v. *Graham*, *supra*, was a case of this kind.

*Park* v. *Daniels,* 37 Vt. 594, was trover for a promissory note. In holding that the plaintiff was entitled to recover, Judge Barrett said: "The plaintiff had given the note for accommodation to the defendant, who was to pay and take care of it, and save the plaintiff from liability upon it. The defendant had paid and taken it up, after having used it for the purpose designed. The plaintiff was then under no further liability. The note was *functus officio.*"

*Stewart* v. *Martin,* 49 Vt. 266, was also trover for a promissory note. In holding that plaintiff could show that the note was executed for a particular purpose which had been accomplished, Judge Ross says: "The maker or owner of a promissory note may always show the terms and conditions on which it was delivered, and that the payee or holder had no right to hold it except for the accomplishment of a particular purpose."

I find the rule for which I stand nowhere more tersely stated than by Mr. Justice Munson, himself, when he says in *Webster* v. *Smith,* 72 Vt. 12, 47 Atl. 101, that "the rule which prohibits the introduction of parol evidence to vary a written instrument has no application when the legal existence or binding force of the instrument is in question." This statement was approved in *Cameron* v. *Estabrooks,* 73 Vt. 73, 50 Atl. 638.

I cannot close this dissent better, or make the injustice of the majority holding more apparent, than by quoting Judge Brewer in *Olmstead* v. *Michaels,* (C. C.) 36 Fed. 455, 1 L. R. A. 840, as follows: "That parol testimony is competent to show that which appears as a perfect written contract was not signed by the parties with the intention of making a contract, and that no binding obligation was assumed by either, is we think unquestioned. A familiar illustration is this: suppose a gathering of young people in which a moot court is proposed for the amusement of those present, and a suit for breach of promise of marriage is the case to be tried in such moot court, and a young man and a young woman, for the purposes of such trial, sign what upon its face appears to be a contract to marry. Would it for a moment be doubted if, after the evening's amusement was ended, she should bring suit for damages for breach of such marriage contract, that parol testimony was competent to show the purposes for which the paper was signed, and that no real or binding obligations were assumed by either party in signing it?"

*The judgment should be affirmed.*

TAYLOR, J., dissenting. The difficulty in this case arises not so much from disagreement as to principles as from their application to the facts of the case. If the parol evidence rule applies, the judgment below should be reversed; otherwise not. That rule presupposes the existence of a valid written contract; but when the execution of a writing as a contract is the very question in issue, the rule does not apply to that issue. In order for the exclusion rule to operate there must be a valid writing; hence, when the immediate issue is whether there is or was a valid writing covering the contract, to exclude oral testimony bearing upon that issue upon the assumption of such written contract would be to beg the question. Bank of Br. No. Am. 2 Cooper, 137 U. S. 473, 34 L. ed. 759, 11 Sup. Ct. 160; 2 Jones on Ev. §437. The rule therefore is not infringed by showing that the writing never had a legal existence or binding force. 1 Elliott on Ev. §§514-515. It is necessary to distinguish carefully between the cases in which it is conceded that there is a legal written contract and those where the existence of such a contract is the issue. While it is uniformly held that collateral agreements are inadmissible to contradict, enlarge or vary a written contract, it is held with equal uniformity that they may be proved for the purpose of showing that the writing never had existence as a legal contract. This distinction runs through all the decisions including those of our own Court.

I am not unmindful of the danger of fraud arising from the reception of parol evidence in any case to avoid the effect of a writing; but it would be a travesty upon justice if rules of procedure calculated to prevent fraud were so administered as to assist in perpetrating a palpable fraud. Such need not be the case, and hence the well recognized limitation of the exclusion rule to cases in which the existence of the writing as a legal contract is conceded or has been established. Protection against fraud is afforded, to some extent at least, by what Mr. Chamberlayne calls "special inertia." He says: "A preponderance (of evidence) in any case is sufficient. But the opposite scale may be conceived as containing a certain weight in caution against any action in such a matter; or, if it be preferred, that the scales do not work readily." 2 Cham. Mod. Law Ev. §1002, note.

The issue as to the validity of the writing as a contract is in a sense a preliminary question. On the authority of *King* v. *Woodbridge*, 34 Vt. 565, it would seem that the burden of establishing the writing as a contract is upon the party asserting it. The production of the writing with evidence of its execution would doubtless make a *prima facie* case in favor of its validity. Standing thus the court would apply the exclusion rule; but if evidence is offered fairly and reasonably tending to impeach its validity, the evidence must be received and, in case of a jury trial, submitted to the jury, with the parol evidence as to the contract, under proper instructions.

Applying these rules to the case at bar, if the order for the outside materials was found to be a legal contract, the defendant's position would be untenable. In that case it could not be shown that the material was not to be paid for without violating the exclusion rule. On the other hand, if the writing never had binding force as a contract, but was intended to serve a particular purpose other than evidencing the contract, then the contract as to such material rests in parol, and it would not violate the exclusion rule to receive evidence tending to show that the outside material was to be furnished without charge in consideration of extensive orders for other materials. It is enough to say that the reception of the evidence tending to show the purpose for which the order was given was not subject to objection under the parol evidence rule; that the evidence on that point fully justified the jury in finding that the order was not intended by the parties as a contract; and that the jury having found that fact under proper instructions, the exceptions to the admission of parol evidence of the contract are unavailing. For these reasons I would affirm the judgment.